UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LORI MERTINS, | Case No. 16-12827 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| CITY OF MOUNT CLEMENS, ET AL., | U.S. MAGISTRATE JUDGE |
| | R. STEVEN WHALEN |
| Defendants. | |

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [27]**

Plaintiff, Lori Mertins, bring this employment retaliation case against her employer, the City of Mount Clemens, and several of her supervisors. She alleges that Defendants retaliated against her, in violation of the First Amendment of the United States Constitution, for exposing the fraudulent over-billing of Mount Clemens residents on their water bills. She brings this case under 42 USC § 1983 and Michigan tort law.

**FACTUAL BACKGROUND**

Plaintiff was already an experienced accountant when she was hired as an account technician for the City of Mount Clemens' Water and Finance Department in 2007. (Lori Mertins Dep. 17, Apr. 19, 2017, Dkt. 29-2). Though at the time of her deposition she was still a city employee, she had been on unpaid medical leave since February 26, 2016. (Id. at 19). During her tenure, she reported to Laura Wille, the

assistant to the finance director, and Marilyn D'Luge, the Finance Director.[1] (Laura Wille Dep. 9-10, September 11, 2018, Dkt. 29-8). Ms. Mertins' job duties included general billing, utility billing, and managing accounts payable. (Mertins Dep. 33). She would send final water bills and delinquent notices, and would also answer customer questions regarding their utility bills or tax assessments. (Id. at 33-34).

In either 2008 or 2009, the Water and Finance Department learned that certain of its customers were being billed incorrectly.[2] (Mertins Dep. at 43-44; Wille Dep. 69). Ms. Mertins worked to correct incidents of over- and under-billing. She combed through consumption history and manually removed additional zeros to correct accounts. (Id. at 45-47). Ms. Wille and Ms. D'Luge testified that Ms. Mertins was entrusted with this duty by her supervisors. (Wille Dep. 77; Marilyn D'Luge Dep. 154 Sept. 17, 2018; Dkt. 32-1). Ms. Mertins testified that her supervisors took actions to cover up the over-billing by changing out meter registers and wiping out credit that customers were owed from past over-billing. (Mertins Dep. 46-47).

---

[1] After Marilyn D'Luge retired in 2015, she was replaced by Linda Kunath, and Laura Wille's title changed to Deputy Finance Director.

[2] The technical attributes of this problem are disputed and are not relevant to the legal issues in this case. Briefly, however, compound water meters can have a high side and a low side, to capture different levels of water use. The high side would capture high volume water use (e.g., washing machines) and the low side would capture low volume water use (e.g., water fountains). (Mertins Dep. at 36-43). It is typical, according to Ms. Mertins' testimony, for the high side meter to have a fixed zero, so that the read always come in at a multiple of ten. (Id.). In Mount Clemens, however, meters were set up with a fixed zero on the low side as well, which produced inaccurate meter readings. (Id.).

Starting in 2009, Plaintiff received numerous corrective memoranda and verbal warnings from her supervisors. These memoranda and warnings addressed issues ranging from disobeying orders regarding water billing computations, to customer service complaints, to adjusting the thermostat and calling in sick. Ms. Mertins alleges that all these disciplinary actions were motivated by her supervisors' retaliation against her for exposing over-billing.[3]

Twice, once in 2010 and once in 2012, Mertins went to her local FBI office to complain about the City's conduct. (Mertins Deposition 143). She also filed a complaint with the County Prosecutor's Office. (Id. at 135). In 2012, she told the City Commissioners that she had gone to the FBI (Id. at 134). She did not tell anyone about her complaint to the prosecutor's office. (Id.).

Plaintiff also fought, and, at least in part, won, the right to be paid at a higher classification level. In February 2013, Plaintiff, through her union, grieved that she was classified as an Accounting Technician I while performing the work of an Accounting Technician III. After an enforcement action in Circuit Court, Plaintiff received backpay of approximately $4,000.[4] (Mertins Dep. 107-08).

---

[3] These memoranda constitute what Plaintiff has enumerated as incidents of retaliation 1, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22, and 23 in her interrogatory answers. (Dkt. 27-4).
[4] Plaintiff's incidents of retaliation 2, 3, 4, 10, 19, 26, 27, 29 and 31 concern Plaintiff not being reclassified to a higher grade. (Dkt. 27-4). Neither the arbitration order, nor any record of the enforcement action, appear on the record except as in pleadings and deposition testimony.

On October 27, 2015, Plaintiff was given a notice for a *Loudermill* disciplinary interview (Plaintiff's incident of retaliation 32). (Dkt. 27-4; Dkt. 29-12). Plaintiff felt heart palpitations after receiving the notice, left work, and took medical leave.[5] (Mertins Dep. 115-16). Plaintiff remained on medical leave at least until the time of her deposition. She continued to be covered by employee health and life insurance. (Id. at 124-125).

## PROCEDURAL HISTORY

Plaintiff brought this suit on August 1, 2016. [Dkt. #1]. Defendants filed a Motion for Summary Judgment on August 23, 2018 [27]. That motion is now fully briefed. The Court now finds the motions suitable for determination without a hearing in accord with Local Rule 7.1(f)(2).

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Movant bears the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-movant lacks evidence to support an

---

[5] Communications between Plaintiff and Defendant regarding her medical leave constitute Plaintiff's incidents of retaliations 30, 32, 33, 34, and 35. Incident 36 is the denial of Plaintiff's Worker's Compensation Claim. Incident 37 is the City's ongoing denial of her worker's compensation claims. (Dkt. 27-4).

essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Non-movant cannot rest on the pleadings and must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87. Non-movant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Rule 56(e)); *see also United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

## ANALYSIS

### I. § 1983 First Amendment Retaliation

As a starting point, a government acting as an employer is less restricted by the First Amendment than a government acting as a sovereign. *Waters v. Churchill*, 511 U.S. 661, 671-73 (1994). Plaintiff alleges that Defendants did all they could to force her out of her job in order to silence her attempts to bring their fraudulent over-billing to light. In order to make out a First Amendment retaliation case, Plaintiff must demonstrate that she 1) was engaged in constitutionally protected speech, 2) that she was subjected to adverse action or deprived of some benefit and 3) that the speech was the substantial or motivating factor in the adverse employment action. *Brandenburg v. Hous. Auth. Of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001).

Taken in the light most favorable to Plaintiff, she has not demonstrated that she was engaged in constitutionally protected speech when she "made statements that were

critical of the defendants' involvement in perpetuating and covering up the fraudulent charges."[6] (Compl. ¶ 16). To prove that such speech is constitutionally protected, a public employee must prove that she 1) was speaking as a citizen addressing matters of public concern and 2) that her interest in addressing matters of public concern outweigh her employer's interest in efficiency. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Plaintiff may be right that municipal utility billing is a matter of public concern, but she does not get to that stage in the analysis until she proves that she was speaking as a citizen, and not as an employee. *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 547 (6th Cir. 2007).

A public employee is not speaking as a citizen when she is speaking "pursuant to an employment responsibility." *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2005).

> "Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission."

*Garcetti*, 547 U.S. at 422-23.

*Garcetti* held that a prosecutor's memorandum disputing the validity of a warrant affidavit was not constitutionally protected speech. The Court narrowed the holding of

---

[6] Plaintiff in her Response insinuates that the retaliation was also directed at her 2013 union-sponsored grievance. This is not what is pleaded in her complaint, however. In fact, this would be the opposite of her pleadings: Plaintiff alleged that she filed a grievance in 2013 because she had been retaliated against since 2009, not vice versa. (Compl. ¶¶ 19-20).

*Garcetti* in *Lane v. Franks*, 134 S. Ct. 2369 (2014), however, by holding that "truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for first amendment purposes." *Id*. at 2378.

The closest that Plaintiff gets to *Lane* protection is her unsworn statements to law enforcement. The flaw in this is that she testified that she did not tell anyone in the City's administration about those tips. (Mertins Dep. 133-35). She told the City Commissioners about her tip to the FBI in 2012, but she does not know if they told any of her supervisors, and, indeed, Plaintiff alleges retaliation beginning in 2009, not 2012. (Id.). Ms. Wille denied having any knowledge of the FBI complaints until her deposition. (Wille Dep. 51). The Court therefore declines to decide whether a public employee's tips to law enforcement are constitutionally protected speech.[7]

The statements at the heart of this case—a public employee's statements to her supervisor regarding the subject of her work—are clearly not protected, however. The Sixth Circuit has held that even "ad hoc or de facto duties can fall within the scope of an employee's official responsibilities despite not appearing in any written job description." *Weisbarth*, 499 F.3d at 544. It doesn't matter whether Ms. Mertins was directly tasked with resolving over-billing issues, or took on those responsibilities informally as part of her duties as an account technician in a department dedicated to the functions of "monitor[ing] the City's expenditures and financial information,"

---

[7] To that end, the Court also declines to decide whether *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888 (6th Cir. 2003) is still good law in light of *Garcetti*, *Lane*, and *Weisbarth*.

"maintain[ing] an accurate and reliable ledger," and "ensur[ing] adherence to financial and accounting policies and procedures." (Dkt. 29-17). The important thing is that her speech "owes its existence to her professional responsibilities." *Weisbarth*, 499 F.3d at 544 (quoting *Garcetti,* 126 S. Ct. at 1960).

Plaintiff's professional responsibilities indisputably involved maintaining correct utility billing accounts. (Mertins Dep. 34; Wille Dep. 27; D'Luge Dep. 154). Speech aimed at correcting water billing and auditing the accounts was thus speech made in Mertins' capacity as an employee, not her capacity as a citizen. This holding accords with precedent. The Sixth Circuit in 2007 held that a canine trainer for an Ohio police force was "carrying out his professional responsibilities" when he wrote an unsolicited memorandum about cost-cutting measures that reduced dog-training hours. *Haynes v. City of Circleville*, 474 F.3d 357, 364 (6th Cir. 2007). Similarly, in *Omokehinde v. Detroit Bd. of Educ.*, 563 F.Supp.2d 717 (E.D. Mich. 2008), a district court held that a public-school Parent Community Liaison's letter to the Detroit Free Press about the school's questionable Title I expenditures was not protected speech because such oversight work was part of the plaintiff's job description. 563 F.Supp.2d at 729-730.

Because the speech for which Plaintiff alleges retaliation was made as a public employee, and not as a citizen, the First Amendment does not shield her from employer discipline. The case will thus not reach steps 2 and 3 of the aforementioned *Pickering* analysis. Plaintiff does not have a viable First Amendment § 1983 claim.

## II. Intentional Infliction of Emotional Distress

Count II of Plaintiff's complaint alleges the Michigan state law tort of intentional infliction of emotional distress. The elements of this tort are 1) extreme or outrageous conduct 2) intent or recklessness 3) causation, and 4) severe emotional distress. *Linebaugh v. Sheraton Michigan Corp*, 198 Mich. App. 335 (1993). Defendants' behavior, even taken in the light most favorable to the plaintiff, does not meet the first element of this tort.

To constitute an intentional infliction of emotional distress, a tortfeasor's conduct must be "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hall v Citizens Ins. Co. of America*, 141 Mich. App. 676, 684; 368 NW2d 250 (1985). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions and other trivialities." *Tope v. Howe*, 179 Mich. App. 91 (Mich. Ct. App. 1989). The alleged acts of retaliation—corrective memos, verbal warnings, denial of job reclassification, and the moving of Plaintiff's desk to the middle of the office—all fail to rise to the level of outrageous conduct as required by Michigan tort law.

## CONCLUSION

Plaintiff has not made out a federal or state claim capable of withstanding summary judgment. Her federal § 1983 claim is foreclosed by *Garcetti* and its requisite inquiry into whether a public employee was speaking as a citizen or pursuant to her job

responsibilities. Her intentional infliction of emotional distress claim fails because she has not shown that Defendants' conduct was extreme or outrageous.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [27] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: March 21, 2019	Senior United States District Judge