UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Lori Mertins,

      Plaintiff,              Case No: 16-12827
                                Honorable Jonathan J.C. Grey

v.

City of Mt. Clemens, et al.,

      Defendants.

_____/

## ORDER DENYING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 64)

### I.   INTRODUCTION

On August 1, 2016, Lori Mertins filed suit against the City of Mount Clemens (the "City"), Steven M. Brown, Laura Wille, and Marilyn D'Luge, alleging First Amendment retaliation. (ECF No. 1.) On April 8, 2024, the defendants filed a renewed motion for summary judgment and also asserted qualified immunity. (ECF No. 64.) For the reasons set forth below, the Court **DENIES** the defendants' motion.  (ECF No. 64.)

### II.   BACKGROUND

Lori Mertins is a former accounting technician for the City of Mount Clemens Finance Department. Mertins was hired by the City in 2007.

(ECF No. 29-2, PageID.272.) As an accountant technician, Mertins was responsible for general billing, utility billing, and managing accounts payable. (*Id*., PageID.288–291.) Her supervisors were the City's Finance Director, Marilyn D'Luge, and Assistant to the Finance Director, Laura Wille.

Beginning in 2009, Mertins learned that the water utility accounting software used by the City produced inaccurate meter readings, which was causing city residents to be overbilled for their water utilities. (*Id*., PageID.292–295.) For example, in one instance, Mertins discovered that the City overcharged a youth home by $400,000. (*Id*., PageID.292, 309.)

Mertins reported the overbilling incident of the youth home to both D'Luge and Wille. She also conducted her own audit of the accounts and started making corrections. D'Luge and Wille informed Mertins to hand over those accounts, so they could make the necessary adjustments. (*Id*., PageID.306–310.) Mertins declined to hand over the accounts and made corrections to the accounts herself. (*Id*.) This led to Mertins receiving a write-up for defying a direct order and being denied a promotion. (*Id*., PageID.309–310.) According to Mertins, D'Luge previously promised her

a promotion earlier in the year in May before this incident occurred. (*Id.*)
Mertins eventually discovered that the City's overbilling issues date back
to the early 2000s, and both Wille and D'Luge had made previous
attempts to cover it up. (*Id.*, PageID.298–303.)

From 2009 onwards, Mertins claims that D'Luge and Wille engaged
in a more than five-year harassment campaign against her for exposing
the City's overbilling issue. (*Id.*, PageID.329, 338–340, 354–360.) During
this time, Mertins, through her union, successfully grieved disciplinary
actions taken against her by D'Luge and Wille in connection with their
harassment. (*Id.*, PageID.310–313, 324–325, 350.) Mertins also informed
the FBI about the City's overbilling issues and lodged a complaint with
the local prosecutor's office in 2011. (*Id.*, PageID.386–390.)

In 2012, Mertins again informed the FBI about the overbilling
issues in the City. (*Id.*) She also told the City Commissioners that she
had spoke with the FBI about the City's overbilling, and D'Luge and
Wille's harassment. (*Id.*) Mertins did not inform anyone about her
complaint to the local prosecutor's office. (*Id.*) Mertins also did not tell
the City Manager, D'Luge, or Wille, that she had spoken to the FBI, but
she believes that one of the commissioners told the City Manager and

mayor. (*Id.*) This led to further harassment from Wille and D'Luge and she was again denied a promotion for the second time. (*Id.*, PageID.354–368.)

On October 27, 2015, Mertins was provided a notice to attend a Loudermill Disciplinary Interview that was scheduled for that same day. (ECF No. 27-4, PageID.164.) Mertins testified that after receiving the notice, she felt stressed and began to experience heart palpitations. (ECF No. 29-2, PageID.370–372.) She left work, went to the hospital and eventually took leave under the Family Leave Medical Act ("FMLA"). (*Id.*) The hearing never took place.

On January 20, 2016, Mertins returned from medical leave, but the harassment continued. (*Id.*) On February 26, 2016, Mertins recommenced her medical leave. (*Id.*) Mertins claims that City Manager, Steven Brown, harassed and retaliated against her from December 2015 to May 2016 by requiring her to submit a doctor's note so she can work without restrictions, providing her updates about her use of FMLA time, and mandating her to return to work by May 11, 2016. (ECF No. 27-4, PageID.164–165.) Ultimately, the City cancelled Mertins' benefits and she never returned to work. (ECF No. 29-2, PageID.371.)

On August 1, 2016, Mertins filed suit against Wille, D'Luge, Brown, in their official capacities, and the City of Mount Clemens for §1983 First Amendment retaliation. (ECF No.1.) Mertins also sued the Wille, D'Luge and Brown in their individual capacities for intentional infliction of emotional distress. (*Id.*)

On August 23, 2018, all defendants moved for summary judgment. (ECF No. 23.) The district court granted summary judgment in favor of the defendants for both claims. (ECF No. 26.) Mertins timely filed appeal of the district court's decision. (ECF No. 39.)

On June 5, 2020, the Sixth Circuit affirmed in part and reversed in part the district court's grant of summary judgment in favor of the defendants and remanded the case for further proceedings consistent with their opinion. *Mertins v. City of Mount Clemens*, 817 F. App'x 126, 132 (6th Cir. 2020).

The Circuit court agreed with the district court's finding of summary judgment for Mertins claims of intentional infliction of emotional distress. *Id.* However, the Sixth Circuit found that "genuine issues of material fact remain with respect to Mertins's statements to Wille and D'Luge and her performance of the audit," and thus, they were

"unable to decide as a matter of law whether those instances of speech are protected" for Mertins First Amendment retaliation claim. *Id.* at 131. Accordingly, the Sixth Circuit reversed the district court's grant of summary judgment in favor of the defendants on that basis.

The Sixth Circuit also "refrain[ed] from deciding the issues of qualified immunity and *Monell* liability until the district court . . . addressed them." *Id.* at n.1.

On May 15, 2023, this case was then reassigned to the undersigned. Following unsuccessful settlement proceedings, on April 5, 2024, the Court set the matter for trial. On April 8, 2024, defendants filed a renewed motion for summary judgment on the basis of qualified immunity and sought summary judgment on the *Monell* claim. (ECF No. 64.)

## III.   LEGAL STANDARD AND QUALIFIED IMMUNITY

The Federal Rules of Civil Procedure provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will prevent summary judgment only if the disputes are genuine and

concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895 (6th Cir.2004).

Although it is the case that the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322–23. A court must look to the

substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

Qualified immunity "shields governmental officials from monetary damages as long as 'their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). In this context, the plaintiff bears the burden of establishing that (1) the defendants' actions violated one of the plaintiff's constitutional rights, and (2) that right was clearly established at the time of the conduct. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 229 (2009). This two-step inquiry may be examined in either order, however, if both questions are not answered in the affirmative, qualified immunity will shield the defendant from civil liability. *Id.* at 236.

For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The primary inquiry is whether government officials are on notice their conduct is unlawful. *Hope v. Pelzer,* 536 U.S. 730 (2002).

"To determine if a right is clearly established, we may look to binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits." *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 515 (6th Cir. 2017) (citations omitted).

Existing precedent must place the question beyond debate; however, a case directly on point is not required to clearly establish a right. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (citations omitted). Broad propositions of law will generally not be enough. *Id.* (citing *Brosseau v. Haugen*, 453 U.S. 194, 199 (2004)). But, for an obvious violation, general propositions can suffice. *Id.* That is, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *City of Tahlequah v. Bond*, 595 U.S. 9, 12–13 (2021) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

## IV.  ANALYSIS

### A. QUALIFIED IMMUNITY

The Court finds that the individual defendants are not entitled to qualified immunity because Mertins has shown sufficient evidence from which a jury could reasonably conclude that the individual defendants violated her first amendment right to freedom of speech, and Mertins'

constitutional right to freedom of speech is "clearly established." *See Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) ("The law is well-settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional and retaliation claims have been asserted in various factual scenarios.").

Defendants argue that they are entitled to qualified immunity because Mertins has "in no manner connected a specific named individual Defendant to a specific action and established that action as violating a clearly established right." (ECF No. 64, PageID.613.) According to the individual defendants, the incidents of retaliation cited by Mertins were simple management functions, as opposed to knowing unlawful conduct. (*Id.*) The Court does not find the defendants' arguments persuasive.

Supreme Court and Sixth Circuit precedent show that Mertins' right to freedom of speech is clearly established. In *Pickering v Board of Education,* 391 US 563 (1968), the Supreme Court held that public employees, like Mertins, retain their constitutional right to free speech even when they work for the government. *Pickering*, 391 U.S. at 563 ("statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that the

10

statements are directed at their nominal superiors."). Since *Pickering* in 1968, First Amendment protection for public employees has been affirmed and re-enforced. *See e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (no requirement for public employees to exhaust state administrative remedies when filing first amendment claim under § 1983); *Rankin v. McPherson*, 483 U.S. 378 (1987) (reaffirming *Pickering* and broadening definition of protected activity under First Amendment).

These same protections have been re-emphasized within our own circuit where the case law further supports Mertins' case. In *Devlin v. Kalm,* 630 F. App'x 534, 536 (6th Cir. 2015), the Sixth Circuit upheld the district court's denial of the defendants' motion for summary judgment on the basis of qualified immunity. The plaintiff, a state employee, had grown disgruntled at Michigan's alleged failure to enforce liquor licensing laws against tribal casinos. *Id*. After his superiors failed to resolve the issue, the plaintiff filed a state mandamus action seeking to compel the defendants to enforce liquor laws, and a state employment claim alleging wrongful failure to promote. *Id*. The plaintiff was then suspended two days after he filed the lawsuits and dismissed from his job

shortly thereafter. *Id.* In response, the plaintiff filed a § 1983 action alleging First Amendment retaliation. *Id.*

In affirming the district court's decision and denying the defendants' claim of qualified immunity, the Sixth Circuit held that the plaintiff's first amendment rights were clearly established because his comments about enforcement were plainly matters of public concern. *Id.* at 539. Further, the Sixth Circuit noted that in such a scenario where the violation of a constitutional right is obvious, "a case directly on point (which is lacking here) is not required." *Id.*

This circuit has even previously held that in certain circumstances it is clearly established that a public employer could not terminate an employee in retaliation for their relative's exercise of First Amendment rights. See e.g., *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 516–17 (6th Cir. 2017) (upholding district court's denial of qualified immunity and concluding that it was clearly established that public employee could not be retaliated against due to close niece's protected speech); *Henley v. Tullahoma City Sch. Sys.*, 84 F. Appx. 534, 540–42 (6th Cir. 2003) (considering retaliation claim by daughter due to protected speech made by father).

Based on this circuit's precedent, it is clear, here, too, that Mertins'
§1983 claim of First Amendment retaliation in violation of her federal
right to freedom of speech is a clearly established constitutional right.
*Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998) (collecting cases) ("it is
well-established that a public official's retaliation against an individual
exercising his or her First Amendment rights is a violation of § 1983.");
*Zilich,* F.3d at 365 ("The law is well-settled in this Circuit that retaliation
under color of law for the exercise of First Amendment rights is
unconstitutional and retaliation claims have been asserted in various
factual scenarios.").

Mertins alleges, and provides evidence of, a five year plus campaign
of harassment against her by her superiors stemming from the fact that
she engaged in constitutionally protected speech by exposing the City's
overbilling issues and a potential cover up. She claims that her superiors
repeatedly denied her promotions she was promised before she engaged
in her protected conduct, wrote her up several times for made-up or
extremely minor violations, and provided her only a notice for a
*Loudermill* hearing that was scheduled for the same day she received the
notice. Because these alleged actions of retaliation are conduct such that

"no reasonable official could possibly believe that it is constitutionally permissible," Mertins' First Amendment Retaliation claim is clearly established. *Zilich*, 34 F.3d at 365. Therefore, Mertins has met her burden under the first prong of the qualified immunity analysis.

Similarly, the Court further finds that Mertins has met her burden under the second prong of the qualified immunity analysis because she has shown that a reasonable jury could conclude that the defendants' actions violated her constitutional right to free speech. *See Nailon*, 715 F. App'x at 515.

To prevail on a First Amendment retaliation claim, Mertins must establish that: (1) she was engaged in constitutionally protected speech or conduct; (2) she was subjected to an adverse employment action that would deter a person of ordinary firmness from continuing to engage in that speech or conduct; and (3) the protected speech was a substantial or motivating factor for the adverse employment action. *Barrow v. City of Hillview*, 775 F. App'x 801, 810 (6th Cir. 2019) (citing *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014)). If the employee establishes a prima facie case of First Amendment retaliation, the burden shifts to the employer to demonstrate by a preponderance of the evidence that the

employment decision would have been the same absent the protected conduct." *Id*.

In reversing the district court's grant of summary judgment in favor of the defendants, the Sixth Circuit, viewing the facts in the light most favorable to Mertins, concluded that the "only real issues are whether Mertins engaged in protected speech and whether she can establish causation." *Mertins*, 817 F. App'x at 130.

With respect to Mertins' speech to her union, the local prosecutors, the FBI, and the City Commissioners, the Sixth Circuit held that Mertins had indeed engaged in protected speech or conduct, and there was "no question that the harassment from Wille and D'Luge constitutes adverse employment action that would deter an ordinary person from speaking." *Id*. Thus, the only remaining issue for this particular segment of Mertins' speech is whether she can show that a reasonable juror can conclude that defendants' actions were in response to Mertins' speech, which the Court finds that she can.

"A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may

create an inference of causation." *Eckerman v. Tennessee Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010).

Here, Mertins testified that she spoke with the FBI for the first time in 2010 about the City's overbilling and cover-up. (ECF No. 29-2, PageID.386–390.) She then spoke with her local prosecutor's office in 2011 and the FBI again for a second time in 2012. (*Id.*) Although the alleged retaliation against Mertins began in 2009, Mertins testified that during this time period from 2010-2012, D'Lugi and Wille's harassment against her continued. (ECF No. 29-2, PageID.329, 338–340, 386–390.) Indeed, she continued to be reprimanded for unusual or fabricated mistakes and was denied a promotion for a second time. (*Id.*) This evidence is sufficient for a reasonable juror to infer that Mertins' speech to law enforcement and local leadership may have been a substantial or motivating factor for the defendants' retaliatory acts against her. *See Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010). Accordingly, viewing all these the facts in the light most favorable to Mertins, she has met her burden under the second prong of the qualified immunity analysis because she has shown that a reasonable jury could

conclude that the defendants' actions violated her First Amendment rights. *Nailon*, 715 F. App'x at 515.

Finally, the Court does not find anything on the record to disturb the Sixth Circuit's prior ruling that summary judgment is inappropriate at this stage as a matter of law because there remains "genuine issues of material fact with respect to Mertins's statements to Wille and D'Luge and her performance of the audit."[1] *Mertins*, 817 F. App'x at 131. Accordingly, the individual defendants' renewed motion for summary judgment on the basis of qualified immunity is denied.

## B. MONELL LIABILITY

The Court finds that the City is not immune from liability under *Monell*.

---

[1] In reversing the district court's grant of summary judgment in favor of the defendants, the Sixth Circuit stated that "[I]f the district court has another opportunity to consider these questions on remand, it should apply the framework described in *Lane*. The district court also should analyze causation with respect to Mertins's statements to Willie and D'Luge, her performance of the audit, her statements to her union and her statements to the local prosecutors—not just her statements to the FBI and the City Commissioners." *Mertins*, 817 F. App'x at 131. Defendants' renewed motion only argues for summary judgment on the basis of qualified immunity and lack of a genuine dispute regarding the *Monell* claim. (ECF No. 56.) The parties did not develop the factual record further and did not request a hearing. As such, the Court only addresses the limited arguments presented by the parties  and finds that genuine issues of material fact continue to exist such that a jury shall assess the claims.

A municipal defendant can only be subject to direct liability if it causes a constitutional violation and harm to the plaintiff because it "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by" that body's officers. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Id.* at 694.

To succeed on a claim for *Monell* liability, the plaintiff must show that a government employee violated the plaintiff's rights pursuant to a custom, policy, or practice of the local government that sanctioned the violation. *Id.* Official government policy includes the decisions of the government's lawmakers, the acts of policymaking officials, and practices that are so persistent and widespread as to have the force of law. *Id.* (citing *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)). A plaintiff must adequately allege facts that show such a custom, policy, or procedure. *Id.* at 387.

Defendants argue that Mertins has insufficiently pled a *Monell* claim for two primary reasons. First, defendant argues that Mertins' complaint fails to identify any specific policy of the City that is causally related to her alleged deprivation of Constitutional rights. (ECF No. 64, PageID.614.)

Second, defendants argue that Mertins fails to establish a *Monell* claim against the City because she does not identify any specific policy with a direct causal link to an asserted Constitutional deprivation or that an injury occurred because of that policy. (*Id*.)

Defendants are correct that Mertins does not establish or identify any specific policy by the City that violated her constitutional rights, however, Mertins "need not show that an individual defendant was implementing an unconstitutional policy, ordinance, or custom to succeed on a *Monell* claim." *Barrow v. City of Hillview, Kentucky*, 775 F. App'x 801, 814 (6th Cir. 2019).

As discussed above, a plaintiff can establish a *Monell* claim in four ways: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training

or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Discovery and pleadings indicate that Mertins seeks to establish *Monell* liability against the city under the second prong pursuant to the theory that the City's Financial Director and City Manager, respectively, D'Luge and Brown, took retaliatory conduct against her and possessed final decision-making authority. (*See* ECF No. 67, PageID.707–708.)

In determining who is an individual with "final decision making authority that ratified illegal actions", the Sixth Circuit in *Jorg v. City of Cincinnati*, 145 F. App'x 143, 146 (6th Cir. 2005), stated:

> Whether a municipal official is a policymaker depends on the conduct in question; the same official may be a policymaker in some situations but not in others. *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292. "[N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id.* at 481, 106 S.Ct. 1292. Otherwise, the municipal liability standard would be nothing more than a *respondeat superior* standard—a move which has been expressly forbidden by the Supreme Court. *Id.* Accordingly, an official is a "policymaker" only when state or local law *vests* in him the "authority to establish municipal policy with respect to the action ordered," and such authority is "final." *Id. See also Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993). "[T]he word 'policy' generally implies a course of action consciously chosen

from among various alternatives." *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Thus, in order for a particular decision by a municipal official to be a "policy" decision, state or local law must give the official the authority to choose from various alternatives when making that particular decision.

When municipal officials have been deemed to be making policy decisions in the past, it has not been because they were vested with the authority to make factual assessments of a particular situation, but *147 rather, because they were vested with the authority to respond to that situation. *See Pembaur,* 475 U.S. at 473–77, 106 S.Ct. 1292 (finding that the county prosecutor's decision to have police officers use an axe to break down a doctor's door was a policy decision); *Meyers,* 14 F.3d at 1116–18 (finding that a City Manager's decision to discharge the Fire Chief in violation of the First Amendment was a policy decision); *Monistere v. City of Memphis,* 115 Fed.Appx. 845 (6th Cir.2004) (finding that a police chief's decision to conduct an immediate strip search of his own officers when they were accused of stealing a motorist's money after a traffic stop was a policy decision); *Brotherton v. Cleveland,* 173 F.3d 552, 562 (6th Cir.1999) (implying that the Coroner's decision to establish a protocol for organ removal was a policy decision).

*Jorg*, 145 F. App'x 143, 146-147.

The Court concludes that D'Luge and Brown both possess final decision-making authority. *See id*. D'Luge was the boss of Mertins' department and the Financial Director of the City. Her role for the City was to "develop and ensure adherence to financial and accounting policies and procedures." (ECF No. ECF No. 29-17, PageID 483.) According to

information gleamed from the City's website, Brown, the City Manager, "plans, develops, and implements diverse City services to meet policy requirements and address community needs; oversees the organization and direction of all City departments; and ensures compliance with contractual and regulatory obligations." (ECF No. 29-16, PageID 481.)

Here, Mertins alleges that she was harassed by Brown from December 2015 through May 2016 in retaliation for exposing the City's overbilling scheme. (ECF No. 27-4, PageID.164–165.) She states that Brown wrongfully required her to submit doctors' notes to return to work without restrictions, and even ordered her to return to work while she was on medical leave recovering from the adverse health effects of that harassment. (*Id.*) Mertins further testifies that D'Luge, the Financial Director at the time, denied her promotions, and continually harassed her throughout the duration of her employment. (ECF No. 29-2., PageID.354–368.) Based on the above, Both D'Luge and Brown are officials with final decision-making authority that ratified illegal actions for which the City may be liable. *Jorg*, 145 F. App'x 143, 146-147. Further, based upon her grievances and reports of harassment directly to the City Commissioners, viewing the facts most favorable to Mertins

permits her to maintain a claim for municipal liability. *See Wright v. Euclid*, 962 F.3d 852, 882 (6th Cir. 2020) (holding that ratification of unconstitutional acts by a decision-maker may occur based on a failure to meaningfully investigate and punish unlawful acts). Accordingly, the Court denies defendants' renewed motion for summary judgment on the *Monell* claim.

V.  **CONCLUSION**

Accordingly, **IT IS ORDERED** that defendants' renewed motion for summary judgment (ECF No. 64) is **DENIED**.

**SO ORDERED**.

s/Jonathan J.C. Grey
JONATHAN J.C. GREY
Dated: June 5, 2024                    UNITED STATES DISTRICT JUDGE

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 5, 2024.

<u>s/ S. Osorio</u>
Sandra Osorio
Case Manager